UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARQUES SCOTT MONDY,

    Petitioner,                                                Case No. 22-11724

v.                                                        HON. MARK A. GOLDSMITH

GEORGE STEPHENSON,

    Respondent.

_____/

**OPINION & ORDER**
**(1) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, (2) GRANTING THE MOTION TO SEAL (Dkt. 9), (3) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (4) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Marques Scott Mondy, confined at the Macomb Correctional Facility in New Haven, Michigan, filed a pro se application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Pet. (Dkt. 1). Petitioner challenges his conviction for two counts of third-degree criminal sexual conduct, Mich. Comp. L. § 750.520d(1)(b). He was sentenced to ten to fifteen years in prison. For the reasons that follow, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus. It declines to issue a certificate of appealability, and it grants Petitioner leave to appeal in forma pauperis. It grants the motion to seal (Dkt. 9).

**I. BACKGROUND**

Petitioner was convicted after a jury trial in Michigan's Kent County Circuit Court.

The victim testified that Petitioner sexually assaulted her inside the bedroom of a friend's house. People v. Mondy, No. 347333, 2020 WL 5084303, at *1 (Mich. Ct. App. Aug. 27, 2020). The victim testified that Petitioner orally and vaginally penetrated her without her consent. Id. The prosecutor also called witnesses who testified about two previous sexual assaults that

Petitioner committed. Id. at *3. Petitioner's conviction and sentence were affirmed. Id.; lv. den. 957 N.W.2d 333 (Mich. 2021).

Petitioner now seeks habeas relief on the following grounds: (i) Petitioner was denied the equal protection of the law when the prosecutor used peremptory challenges to remove the only African Americans from the jury; (ii) the admission of prior bad acts evidence, in violation of Michigan Rule of Evidence (MRE) 404(b), violated Petitioner's due process rights; (iii) the sentencing guidelines were incorrectly scored or, alternatively, counsel was ineffective for failing to object; and (iv) Petitioner is entitled to a resentencing when the judge departed upwards from the sentencing guidelines range, leading to a disproportionate sentence. Petitioner asserts that the judge's upward departure was done to punish him for exercising his right to go to trial instead of pleading guilty.

## II.  STANDARD OF REVIEW

Title 28 of the United States Code Section 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

### III. DISCUSSION

**A. Habeas Petition**

The Court discusses each of Petitioner's claims for relief in turn.

**1. Claim 1: The Equal Protection Claim**

Petitioner first alleges that the prosecutor violated his right to equal protection by using peremptory challenges to remove the only two African American jurors from the jury.

The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on account of their race. Batson v. Kentucky, 476 U.S. 79, 89 (1986). A criminal defendant may establish a prima facie case of purposeful discrimination in the

3

selection of a petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. Id. at 96. To establish such a case, a defendant must show that he is a member of a cognizable racial group and that the prosecutor has used peremptory challenges to remove members of the defendant's race from the jury venire. Id. at 96–97. The defendant must also show that these facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors from the petit jury on account of their race. Id. These relevant circumstances include the pattern of strikes and the prosecutor's questions and statements. Id. Once the defendant makes a prima facie showing, the burden then shifts to the prosecutor to offer a "race neutral explanation" for challenging the jurors. Id. at 97. The prosecutor's explanation does not have to rise to the level that would justify the exercise of a challenge for cause, but a prosecutor may not rebut a defendant's prima facie case of discrimination by simply stating that he challenged jurors of the defendant's race on the assumption that they would be partial to the defendant because they were members of the same racial group. Id. The trial court must then determine whether the defendant carried his or her burden of proving purposeful discrimination. Id. at 98.

A "race neutral" explanation in the context of a Batson claim means "an explanation based on something other than the race of juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Hernandez v. New York, 500 U.S. 352, 360 (1991). A race neutral explanation that is offered by the prosecution need not be persuasive or plausible; instead, the persuasiveness or the justification becomes relevant only when the trial court determines whether the opponent of the challenge has carried his burden of proving purposeful discrimination. Purkett v. Elem, 514 U.S. 765, 767–769 (1995).

On habeas review of a state conviction, a Batson claim involves "a mixed question of law and fact and 'necessarily focuses on the reasonableness of the decisions of the state courts—that is, whether those decisions constituted an unreasonable application of Supreme Court precedent.'" Braxton v. Gansheimer, 561 F.3d 453, 458 (6th Cir. 2009) (quoting Lancaster v. Adams, 324 F.3d 423, 429 (6th Cir. 2003)). However, the question of whether a prosecutor intended to discriminate on the basis of race in challenging a potential juror is a question of historical fact. Lancaster, 324 F.3d at 429. "Under [the] AEDPA, primary or historical facts found by state courts are presumed correct and are rebuttable only by clear and convincing evidence." Id. (punctuation modified). Therefore, "while a district court's ruling on a Batson claim presented on direct appeal is entitled to great deference and should not be disturbed unless it is clearly erroneous, 'the standard must be modified in the context of a § 2254 petition to give credence to § 2254(e)(1)'s requirement that facts found by a state court be presumed correct unless the petitioner rebuts this presumption by clear and convincing evidence.'" Braxton, 561 F.3d at 458 (quoting Lancaster, 324 F.3d at 429 n. 1).

After the defending party offers its race-neutral justification, the challenging party must "demonstrate that the purported explanation is merely a pretext for a racial motivation." McCurdy v. Montgomery Cnty., 240 F.3d 512, 521 (6th Cir. 2001). "Because the primary defense to pretext based violations of Batson is the [trial] court's ability to assess the credibility of an attorney's representations, it is critical that the [trial] court independently assess the proffered justifications." Id. "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." Miller–El v. Cockrell, 537 U.S. 322, 339 (2003) (punctuation modified). Then "the trial court must determine whether the defendant has carried [his or her] burden of proving purposeful discrimination." Hernandez,

5

500 U.S. at 359. "[A] state court's finding of the absence of discriminatory intent is a 'pure issue of fact' accorded significant deference." Miller–El, 537 U.S. at 339 (quoting Hernandez, 500 U.S. at 364–365.

> The Michigan Court of Appeals rejected Petitioner's claim as follows:
>
> During jury selection the trial court randomly called two jurors, AH and KH, to the jury box. The trial court asked each juror general questions about marital status, children, education, and employment. AH and KH both responded that they were married with two children. AH also revealed that he had a criminal record and previous experience in counseling working with "at-risk students." The prosecution then asked if any of the jurors knew each other. AH and KH then revealed that they were married to each other and shared the two children. KH confirmed that they were still married. The prosecution also inquired whether KH shared the "same views on issues and things in life" with AH. The prosecution ultimately used peremptory challenges to dismiss AH and KH. Defendant objected, claiming that it deprived him of having minorities present on the jury.

Mondy, 2020 WL 5084303, at *1.

After discussing the applicable case law, the Michigan Court of Appeals concluded that Petitioner failed to show that there had been purposeful discrimination on the prosecutor's part in excluding the two jurors:

> First, when asked for its reason for exercising the challenge against AH and KH, the prosecution provided multiple reasons. It first cited AH's previous counseling experience and criminal record as reasons. However, the prosecution went on to discuss multiple times, and much more thoroughly, its belief that the marriage might cause bias as AH and KH might influence each other and might create a situation where the trial court's instructions would not be followed given the opportunity and inclination of a married couple to discuss the case outside of deliberations. Notably, the prosecution first attempted to challenge the jurors for cause citing marriage as the reason. It reiterated that reason in making its peremptory challenges and additionally pointed out that neither potential juror volunteered the fact that they were married during voir dire and that their body language when questioned whether they knew each other suggested that they did not want to provide the information. The prosecutor also noted the following during argument on the Batson issue:
>
>> And it is not simply based on race, because I would have done that for any race. When you have a married couple on the jury panel, that caused me a lot of concern, and a big one, as I indicated, is that are

6

>>they going to discuss this matter outside of the court, outside of the jury room, outside of Your Honor's instructions.
>
>The trial court's finding the prosecutor's race-neutral explanations to be credible was not clearly erroneous.

Id. at *2.

In the present case, the trial court judge and the Michigan Court of Appeals reasonably determined that the prosecutor had given valid race-neutral reasons for peremptorily challenging the two African American jurors. The prosecutor cited to AH's prior criminal record as a reason for removing him from the jury. This is a valid, race-neutral reason for peremptorily challenging a juror. See United States v. Forrest, 402 F.3d 678, 687 (6th Cir. 2005) (finding that prosecutor's exercise of peremptory challenge to excuse only African American prospective juror from the jury panel did not violate Batson when prosecutor explained that juror had criminal record, which was a valid race-neutral reason to exclude the juror). The prosecutor also mentioned that AH was a social worker, whom the prosecutor feared would sympathize unduly with petitioner. "Occupation is a permissible reason to defend against a Batson challenge." Hall v. Luebbers, 341 F.3d 706, 713 (8th Cir. 2003). The prosecutor's explanation that she excluded AH because he was a social worker was a valid, race-neutral reason to peremptorily challenge AH. See Felkner v. Jackson, 562 U.S. 594, 595–597 (2011) (finding that prosecutor offered valid reason to remove prospective juror because prospective juror had a master's degree in social work and had interned at the county jail, "probably in the psych unit as a sociologist of some sort."). The prosecutor also noted that AH and KH were married and she was worried that if these two people remained on the jury, they might disregard the judge's instructions by discussing the case between themselves without the other jurors present or that either juror might try to unduly influence the other based on their marital relationship. A prospective juror's marital status is a valid reason under Batson to exclude that

juror. See United States v. Martinez, 168 F.3d 1043, 1047 (8th Cir. 1999). More specifically, the prosecutor's decision to peremptorily challenge two married people from sitting on the same jury is a racially neutral rationale that defeats petitioner's Batson claim. See Gilder v. State, 542 So. 2d 1306, 1307 (Ala. Crim. App. 1988) (stating that prosecution's explanation for striking potential black juror demonstrated peremptory strike was used in race neutral manner because the juror's mother was serving on that jury, and the prosecutor explained that "she did not like immediate family members to serve on the same jury"). The prosecutor also explained to the judge that she excused KH because KH never disclosed she was married to AH until the prosecutor asked the question. The prosecutor also felt that the body language of both AH and KH demonstrated that they did not seem to want to offer that information. A prospective juror's dishonesty is a valid non-discriminatory reason for exercising a peremptory challenge. See Kyle v. Romanowski, No. 08-cv-14781, 2011 WL 977497, at *17 (E.D. Mich. Mar. 17, 2011). Likewise, "[B]ody language and demeanor are permissible race-neutral justifications" to exercise a peremptory challenge. McCurdy, 240 F.3d at 521.

The trial judge reasonably concluded that the prosecutor offered valid race-neutral reasons for removing AH and KH from the jury. More importantly, the state trial judge found the prosecutor credible in determining that the reasons offered by the prosecutor for excusing the jurors were race-neutral and not motivated by a discriminatory intent. A state court's finding that there is no discriminatory intent is a pure issue of fact that is granted significant deference. Miller, 537 U.S. at 339, Although "reasonable minds" who reviewed the record might disagree about the prosecutor's credibility concerning her proffered reasons for excusing these two jurors, "on habeas review that does not suffice to supersede the trial court's credibility determination." Rice v. Collins, 546 U.S. 333, 341–342 (2006). Because the state trial judge's decision to credit the

prosecutor's race-neutral explanation for peremptorily striking AH and KH in response to Petitioner's Batson challenge was not an unreasonable determination of the facts in light of evidence presented in state court, Petitioner is not entitled to habeas relief on his Batson claim. Id.

### 2. Claim 2: The Prior Bad Acts Evidence Claim

Petitioner next argues that the judge denied him a fair trial by admitting evidence of Petitioner's two prior sexual assaults, in violation of MRE 404(b).

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). A federal court is limited in federal habeas review to deciding whether a state-court conviction violates the constitution, laws, or treaties of the United States. Id. Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000).

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief because it involves a state-law evidentiary issue. See Hall v. Vasbinder, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); rev'd on other grounds 563 F.3d 222 (6th Cir. 2009); see also Oliphant v. Koehler, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

Petitioner's claim that the state court violated MRE 404(b) by admitting other acts evidence against him does not entitle him to relief because this claim is non-cognizable on federal habeas review. See Bey v. Bagley, 500 F3d 514, 519 (6th Cir. 2007); Estelle, 502 U.S. at 72 (stating that the Supreme Court's habeas powers did not permit the Court to reverse a state-court conviction based on its belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); Dowling v. United States, 493 U.S. 342, 352–353

(1990) (determining that admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. See Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003). Petitioner is not entitled to habeas relief on his second claim.

### 3. Claims 3 and 4: The Sentencing Claims

The Court discusses the sentencing claims together. In his third claim, Petitioner alleges that the judge incorrectly scored Petitioner's sentencing guidelines range under the Michigan Sentencing Guidelines. Alternatively, he argues that counsel was ineffective for failing to object. In his fourth claim, Petitioner argues that the judge improperly departed upwards from the sentencing guidelines range, leading to a disproportionate sentence. Petitioner also claims that the judge penalized him for refusing to accept responsibility for his criminal conduct.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state-law claim. See Tironi v. Birkett, 252 F. App'x 724, 725 (6th Cir. 2007); Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003). Errors in the application of state sentencing guidelines cannot independently support habeas relief. See Kissner v. Palmer, 826 F.3d 898, 904 (6th Cir. 2016).

Petitioner's related fourth claim that the state trial court improperly departed above the sentencing guidelines range does not entitle him to habeas relief because such a departure does not violate any of Petitioner's federal due process rights. See Austin v. Jackson, 213 F.3d 298, 301

10

(6th Cir. 2000); see also Drew v. Tessmer, 195 F. Supp. 2d 887, 889–890 (E.D. Mich. 2001). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." Doyle v. Scutt, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in departing above Petitioner's sentencing guidelines range alone does not merit habeas relief. Id.

Petitioner, however, also argues that his sentence is disproportionate. But he fails to state a claim for federal habeas relief. The federal constitution does not require that sentences be proportionate. In Harmelin v. Michigan, 501 U.S. 957, 965 (1991), a plurality of the Supreme Court concluded that the Eighth Amendment does not contain a requirement of strict proportionality between the crime and sentence. The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. Id. at 1001. Furthermore, a sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. Austin, 213 F.3d at 302.

Courts reviewing Eighth Amendment proportionality claims must remain highly deferential to the legislatures in determining the appropriate punishments for crimes. United States v. Layne, 324 F.3d 464, 473–474 (6th Cir. 2003) (citing Harmelin, 501 U.S. at 999). "In implementing this 'narrow proportionality principle,' the Sixth Circuit has recognized that 'only an extreme disparity between crime and sentence offends the Eighth Amendment.'" Cowherd v. Million, 260 F. App'x 781, 785 (6th Cir. 2008) (quoting United States v. Marks, 209 F.3d 577, 583 (6th Cir. 2000)). As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining "the type and extent of punishment for convicted defendants." Williams v. New York, 337 U.S. 241, 245 (1949).

Moreover, federal courts generally do not engage in a proportionality analysis except where the sentence imposed is death or life imprisonment without parole. See United States v. Thomas, 49 F.3d 253, 261 (6th Cir. 1995); Vliet v. Renico, 193 F. Supp. 2d 1010, 1015 (E.D. Mich. 2002). Therefore, successful challenges to the proportionality of a particular sentence in non-capital cases are "exceedingly rare." Rummel v. Estelle, 445 U.S. 263, 272 (1980).

Petitioner's sentence of 10 to 15 years was within the statutory maximum for third-degree criminal sexual conduct. Petitioner has failed to show that the sentence was unduly excessive. See, e.g., Moore v. Romanowski, No. 07-cv-12536, 2007 WL 1775372, at *1 (E.D. Mich. June 20, 2007).

Petitioner argues in the alternative that trial counsel was ineffective for failing to object to the scoring of the sentencing guidelines. A right to the effective assistance of counsel exists during sentencing in both noncapital and capital cases. See Lafler v. Cooper, 566 U.S. 156, 165 (2012). Although sentencing does not involve a criminal defendant's guilt or innocence, "ineffective assistance of counsel during a sentencing hearing can result in Strickland prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" Id. (quoting Glover v. United States, 531 U.S. 198, 203 (2001)).

The Michigan Court of Appeals rejected the ineffective assistance of counsel claim, concluding that Petitioner was unable to show that, because the judge departed above the sentencing guidelines range and imposed the maximum sentence of 10 to 15 years, he was prejudiced by counsel's failure to object to the scoring of the sentencing guidelines. Mondy, 2020 WL 5084303, at *5. In light of the fact that the trial court would have departed above the sentencing guidelines range and imposed the same sentence even if counsel had objected to the scoring of the guidelines variables, counsel's failure to do so did not prejudice Petitioner so as to

entitle Petitioner to relief on his ineffective assistance of counsel claim. Id.; see also United States v. Kirkham, 295 F. App'x 910, 913 (10th Cir. 2008).

Petitioner finally alleges that the judge departed above the sentencing guidelines range to penalize him for going to trial and refusing to admit guilt. Petitioner referenced the following statement made by the judge at sentencing in support of his claim:

> You have, quite frankly, refused to accept any responsibility in this matter. You are without question a serial rapist. You are a danger to this community, sir.

12/20/18 Sentencing Hr'g Tr. at PageID.799–800.

The Michigan Court of Appeals rejected Petitioner's claim as follows:

> The trial court did not inappropriately consider defendant's refusal to accept responsibility for his actions in this case. It is true that "[a] court cannot base its sentence even in part on a defendant's refusal to admit guilt," and resentencing is required if "it is apparent that the court erroneously considered the defendant's failure to admit guilt, as indicated by action such as asking the defendant to admit his guilt or offering him a lesser sentence if he did." People v. Conley, 270 Mich. App. 301, 314; 715 N.W.2d 377 (2006) (quotation marks and citations omitted). However, in this case, the trial court made an isolated statement, "You have, quite frankly, refused to accept any responsibility for [sic] this matter." This statement did not indicate that the trial court based its sentence in part on defendant's refusal to admit guilt or that he would have received a different sentence if he had done so.

Mondy, 2020 WL 5084303, at *7.

The judge in this case did not mention Petitioner's decision to go to trial as a basis for imposing the sentence. Instead, the judge indicated that after listening to all the evidence in the case, he believed that the jury reached the correct verdict. The judge said: "There is no question in my mind, sir, that you raped this young lady, and quite frankly, that you are a serial rapist." 12/20/18 Sentencing Hr'g Tr. at PageID.798. After considering Petitioner's criminal record and the nature of the offense, id. at PageID.798–799, the judge made the remark that Petitioner refused to accept responsibility for his actions.

13

A judge may consider a defendant's refusal to accept responsibility and his lack of remorse in fashioning a sentence so long as the judge does not indicate that he is punishing the defendant for having exercised his right to a trial. See United States v. Mitchell, 681 F.3d 867, 884 (6th Cir. 2012) (finding that federal district court could consider defendant's failure to take responsibility and lack of remorse in sentencing the defendant to a within-guidelines sentence for his participation in a long-running scheme to bribe county auditor into awarding overvalued contracts for appraisal work to a company formed by defendant's law partner). The jury found Petitioner guilty of sexually assaulting the victim, and the judge indicated that he agreed with that decision. Based on these findings, the judge found that Petitioner's "continued efforts to deny his involvement demonstrated a failure to take responsibility for his crime and a lack of remorse for the harm he had caused." Id. "The judge could have reasonably concluded that [Petitioner]'s dishonesty regarding important pieces of evidence indicated that he had not fully accepted responsibility for his participation in the [crime]." Id. (punctuation modified). Thus, 'it was not [Petitioner]'s exercise of his right to [a jury trial], but rather, that he did not accept responsibility for his crime" that the judge considered in imposing sentence. Id. (punctuation modified). Petitioner is not entitled to relief on his final claim.

Because none of Petitioner's claims merits habeas relief, the Court denies the petition for writ of habeas corpus.

**B. Certificate of Appealability**

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. A certificate of appealability may

issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484–485 (2000). "A petitioner satisfies this standard by demonstrating that. . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. In applying that standard, a district court may not conduct a full merits review but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336–337.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his claims. Accordingly, a certificate of appealability is not warranted in this case.

**C. Leave to Proceed In Forma Pauperis on Appeal**

While a certificate of appealability may be granted only if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant an application for leave to proceed in forma pauperis on appeal if it finds that an appeal can be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(2). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster v. Ludwick, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002). Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous. Therefore, an appeal could be taken in good faith, and Petitioner may proceed in forma pauperis on appeal. Id.

**D. Motion to Seal**

Respondent filed a motion to seal the presentence investigation report. A federal court has the power to seal records when the interests of privacy outweigh the public's right of access to

Case 2:22-cv-11724-MAG-CI  ECF No. 12, PageID.1120  Filed 07/26/23  Page 16 of 16

those records. See Ashworth v. Bagley, 351 F. Supp. 2d 786, 789 (N.D. Ohio 2005). State law dictates that the contents of a presentence investigation report be kept confidential. See 1991 Staff Comment to Michigan Court Rule 7.212. The Court grants the motion to seal. Respondent can refile the presentence investigation report under seal.

## IV. CONCLUSION

For the reasons set forth above, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus, declines to issue a certificate of appealability, and grants Petitioner leave to proceed in forma pauperis on appeal. The Court grants the motion to seal (Dkt. 9). Respondent may refile the presentence investigation report under seal.

SO ORDERED.

Dated: July 26, 2023  s/Mark A. Goldsmith
    Detroit, Michigan  MARK A. GOLDSMITH
      United States District Judge

16